# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3203

_____

Troy Rokusek

*Plaintiff - Appellee*

v.

Cody Jansen, individually

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: June 15, 2018
Filed: August 8, 2018

_____

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

South Dakota State Trooper Cody Jansen appeals the district court's[1] denial of summary judgment on Troy Rokusek's claim under 42 U.S.C. § 1983. The district court determined that Trooper Jansen was not entitled to qualified immunity because

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

the evidence, construed in Rokusek's favor, showed that Jansen violated his clearly established right to be free from excessive force.  We affirm.

On the night of April 14, 2015, Jansen arrested Rokusek for driving while impaired and transported him to a garage at the courthouse in Clay County, South Dakota.  Once there, Jansen removed the handcuffs from Rokusek, who consented to having his blood drawn.  Though a medical technician was in the garage to perform the blood draw, Rokusek preferred a more sanitary environment and withdrew his consent.  Jansen ordered Rokusek to stand so that he could handcuff him again before obtaining a warrant to draw blood.  Despite Jansen's three requests, Rokusek refused to comply.  Jansen, who was 6'4" and weighed at least 180 pounds at the time of the incident, pulled Rokusek, who was 5'6" and weighed 135 pounds, to a standing position.  He then placed him in a "double-chicken-wing hold" by putting his arms around Rokusek's arms and interlocking them behind Rokusek's back.  As is evident from a video recording of the incident, the hold immobilized the much smaller Rokusek.  The two remained in this position until Jansen suddenly threw Rokusek face-first to the ground.  Because his arms were immobilized, Rokusek was unable to brace his fall and lost two teeth.

We review *de novo* the district court's denial of qualified immunity on summary judgment, viewing the record in the light most favorable to Rokusek and drawing all reasonable inferences in his favor.  *See Shannon v. Koehler*, 616 F.3d 855, 861-62 (8th Cir. 2010).  To overcome Trooper Jansen's claim of qualified immunity, Rokusek must show the violation of a constitutional right that was clearly established at the time of the violation. *See Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016).  "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  A right is clearly established if "every reasonable official would have understood that what he is doing

violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted).

Trooper Jansen argues that the district court did not consider his point of view in evaluating the reasonableness of his actions. While reasonableness is an objective standard, it must account "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). An officer need not "pursue the most prudent course of conduct as judged by 20/20 hindsight vision." *Retz v. Seaton*, 741 F.3d 913, 918 (8th Cir. 2014). With these principles in mind, we consider several factors, including the severity of the suspect's crime, whether the suspect was threatening the officers or others, and whether the suspect was actively resisting or fleeing. *Graham*, 490 U.S. at 396.

Under these factors, Jansen's use of force was not objectively reasonable under the circumstances. Rokusek was an unarmed, nonviolent offender. He was not threatening Jansen or the technician, and he was not actively resisting or fleeing. Nonetheless, the much larger Jansen lifted him off the ground and slammed his head into the floor, causing him to lose two teeth. Though Jansen testified that Rokusek pushed back against him while he was in the double-chicken-wing hold, the video makes clear that any contact was slight.

Jansen argues that we sanctioned a comparable takedown under similar circumstances in *Vester v. Hallock*, 864 F.3d 884 (8th Cir. 2017). But in finding that the officer in *Vester* had not used excessive force, we relied on "the very real possibility that [the suspect] still had a concealed knife on his person." *Id.* at 887. Rokusek posed no such danger. The situation Jansen faced also differed from that in *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1007, 1011 (8th Cir. 2017), where an officer took a fleeing arrestee to the ground after he ignored repeated warnings to put

-3-

his hands behind his back. While Rokusek had disobeyed Jansen's three prior orders to stand up, he has denied that he continued to ignore Jansen's commands. Jansen had him fully under control. Construing the evidence in Rokusek's favor, Jansen used more than "the force necessary" to handcuff Rokusek. *See id.* at 1011.

We now turn to the second prong of the qualified immunity test: whether the right was clearly established at the time of the violation. Jansen correctly emphasizes that Rokusek bears the burden of showing that the law was clearly established. *See Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013). The Supreme Court has warned that we must not "define clearly established law at a high level of generality," and a right's contours must be "sufficiently clear" so that "every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741-42 (internal quotation marks omitted). But as the Court has explained, "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Here, several cases establish that every reasonable official would have understood that he could not throw Rokusek—a nonviolent, nonthreatening misdemeanant who was not actively resisting—face-first to the ground. *See Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013); *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012); *see also Brown*, 574 F.3d at 499; *Rohrbough v. Hall*, 586 F.3d 582, 586-87 (8th Cir. 2009). While none of these cases involve a fact pattern precisely like the one at issue here, there is no requirement that Rokusek must find a case where "the very action in question has previously been held unlawful," *see Rohrbough*, 586 F.3d at 587, so long as "existing precedent [has] placed the statutory or constitutional question beyond debate," *al-Kidd*, 563 U.S. at 741. Jansen had "fair warning" that he should not have thrown a nonviolent, nonthreatening suspect who was not actively resisting face-first to the ground. *See Hope*, 536 U.S. at 741.

-4-

Accordingly, we affirm the district court's order denying Jansen summary judgment on the basis of qualified immunity.

_____