# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1162

———————————————

Courtney MacKintrush

*Plaintiff - Appellee*

v.

Pulaski County Sheriff's Department; Pulaski County Regional Detention Facility

*Defendant*s

Dustin Hodge, individually and in his official capacity as a Deputy with Pulaski County Sheriff's Office

*Defendant - Appellant*

Franklin Snodgrass, individually and in his official capacity as a Deputy with Pulaski County Sheriff's Office; John Does, 1-2; Pulaski County Arkansas

*Defendant*s

———————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

———————

Submitted: January 12, 2021
Filed: February 5, 2021

———————

Before GRUENDER, BENTON, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

Courtney D. MacKintrush sued Deputy Dustin Hodge and Pulaski County under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights. Defendants moved for summary judgment, which the district court[1] denied. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

The facts stated here are those the district court likely assumed, in the light most favorable to the nonmoving party. *See **Johnson v. Jones***, 515 U.S. 304, 319 (1995).

MacKintrush was arrested on April 18, 2015 at a halfway house. There he destroyed several pieces of property, acting erratically. Taken to the Pulaski County Regional Detention Facility, he was booked for second-degree criminal mischief, a misdemeanor. During booking, MacKintrush appeared agitated. He complained that Deputy Hodge mispronounced his name and asked him to wear the standard-issue detainee shirt. To calm him down, Hodge and Deputy Franklin Snodgrass led MacKintrush toward a holding cell. To steer him, Hodge tried to place his hand on MacKintrush's shoulder. MacKintrush shrugged him off. (The parties dispute whether the shrug touched Deputy Hodge.) Hodge lifted and slammed MacKintrush to the floor. (The parties dispute whether Hodge used a "standard takedown maneuver" or a "full body-slam".) About five detention facility employees responded within ten seconds. MacKintrush was knocked unconscious. Six unrestrained detainees watched the incident. None made any move toward Hodge or the employees.

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotation omitted). "We review de novo a district court's denial of summary judgment based on qualified immunity." *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015). "A defendant denied summary judgment based on qualified immunity may appeal the purely legal issue of whether the facts alleged support a claim of violation of clearly established law." *Mallak v. City of Baxter*, 823 F.3d 441, 446 (8th Cir. 2016) (cleaned up). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). "To determine whether the defendants are entitled to qualified immunity, we ask two questions:  (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017). "For a right to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (quotation omitted).

I.

A jury could find MacKintrush's constitutional rights were violated. MacKintrush's "excessive-force claim is governed by the Fourth Amendment's objective reasonableness standard." *Parrish v. Dingman*, 912 F.3d 464, 467 (8th Cir. 2019). "[T]he Fourth Amendment's 'objective reasonableness' standard for

arrestees governs excessive-force claims arising during the booking process." ***Hicks v. Norwood***, 640 F.3d 839, 842 (8th Cir. 2011). To determine objective reasonableness, a court may look to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." ***Zubrod v. Hoch***, 907 F.3d 568, 577 (8th Cir. 2018), *quoting* ***Kingsley v. Hendrickson***, 135 S. Ct. 2466, 2473 (2015).

A jury could find Hodge's use of force reasonable, but his arguments on appeal require impermissibly construing disputed facts in his favor. *See* ***Thompson v. Murray***, 800 F.3d 979, 983 (8th Cir. 2015). The district court correctly identified two disputed issues of fact that precluded determining Hodge's conduct was objectively reasonable: (1) whether and to what degree MacKintrush was noncompliant; (2) whether MacKintrush posed a threat. *See* ***Littrell v. Franklin***, 388 F.3d 578, 584-85 (8th Cir. 2004) (a factfinder determines disputed facts before a district court rules on qualified immunity); ***Zubrod***, 907 F.3d at 577. The district court did not err in ruling that material factual disputes prevented it from determining Hodge used reasonable force.

## II.

The right of a passive arrestee to be free from excessive use of body slams (or similar techniques) was clearly established when Hodge took MacKintrush to the floor. Force may be appropriate if a suspect presents a possible threat to police. *See* ***Kisela v. Hughes***, 138 S. Ct. 1148, 1151 (2018) (per curiam); ***Hicks***, 640 F.3d at 841 (involving a takedown). "There is no requirement that the plaintiff must find a case where the very action in question has previously been held unlawful so long as existing precedent has placed the statutory or constitutional question beyond debate." ***Karels v. Storz***, 906 F.3d 740, 747 (8th Cir. 2018), *quoting* ***Rohrbough v. Hall***, 586 F.3d 582, 586-87 (8th Cir. 2009) (cleaned up). It is "unreasonable for an officer to body-slam a nonviolent, nonthreatening misdemeanant who pulled her arm

away from the officer to extinguish a cigarette, where no reasonable officer would have viewed the act as noncompliance." ***Shelton v. Stevens***, 964 F.3d 747, 754 (8th Cir. 2020), *citing **Karels***, 906 F.3d at 747. Ambiguous gestures that officers claim are noncompliant (such as reaching to extinguish a cigarette) do not justify body slamming an otherwise compliant, nonviolent, nonthreatening misdemeanant. ***Karels***, 906 F.3d at 747.[2] *See also **Small v. McCrystal***, 708 F.3d 997, 1005 (8th Cir. 2013) (takedown of nonresistant subject unconstitutional); ***Montoya v. City of Flandreau***, 669 F.3d 867, 873 (8th Cir. 2012) (leg sweep of nonviolent misdemeanant unconstitutional); ***Shannon v. Koehler***, 616 F.3d 855, 864-65 (8th Cir. 2010) (only de minimis force justified against nonresistant subject); ***Atkinson v. City of Mountain View***, 709 F.3d 1201, 1213 (8th Cir. 2013) (charging into nonresistant suspect unconstitutional during an arrest); ***Brown v. City of Golden Valley***, 574 F.3d 491, 499 (8th Cir. 2009) (use of stun gun on nonviolent misdemeanant unconstitutional); ***Rohrbough***, 586 F.3d at 586-87 (punch to face of originally compliant suspect unconstitutional where officer provoked conflict).

Crediting MacKintrush's account and the video of the incident, he was not actively resisting Hodge. Hodge tried to physically steer MacKintrush while he was walking through booking. MacKintrush shrugged off his touch. Hodge immediately body-slammed MacKintrush to the floor, knocking him out. Assuming that MacKintrust was a nonviolent, nonthreatening misdemeanant who pulled his arm away from the officer, *Karels* put Hodge on notice that his body slam was excessive force.

---

[2]Although *Karels* was decided in 2018, its holding binds the panel since this court said it was clearly established on March 28, 2015 that an officer cannot use a body-slam technique under ambiguous circumstances, by an otherwise compliant, nonviolent, nonthreatening misdemeanant. ***Karels***, 906 F.3d at 746. *Cf. **Kelsay***, 933 F.3d at 980 (right not established in May 2014). This incident occurred on April 18, 2015, so *Karels* controls.

* * * * * * *

The order of the district court is affirmed.

_____